**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MILTON PAUL DURHAM,      :
                            :   Civil Action No. 09-4314 (PGS)
              Plaintiff,   :
                            :
              v.          :   **OPINION**
                            :
NEW JERSEY DEPARTMENT OF   :
CORRECTIONS, et al.,       :
                            :
              Defendants.   :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Milton Paul Durham
New Jersey State Prison
Second and Cass Streets
P.O. Box 861
Trenton, NJ 08625

**SHERIDAN**, District Judge

     Plaintiff Milton Paul Durham, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on December 27, 2001, while confined at New Jersey State Prison, he was subjected to a "semi-pat-frisk" by Lieutenant Debenedictus and Sergeant Williams.  He alleges that Debenedictus began making "lewd and hostile" comments and then assaulted him in a stairwell, watched by various unknown persons.  Plaintiff alleges that Debenedictus ordered Williams to call in a "Code 33," at which time all of the unknown persons joined in a physical attack on Plaintiff.

Plaintiff alleges that he was then taken to the clinic where he received medical treatment and remained for observation.

Plaintiff received three disciplinary charges based upon these events, which were dismissed on January 11, 2002, based upon a videotape that captured the incident in the stairwell.

Shortly after the incident, Plaintiff was transferred at East Jersey State Prison.

Plaintiff alleges that he filed administrative remedies with New Jersey State Prison and East Jersey State Prison.  When he

2

did not receive a response, he filed a Notice of Claim with the New Jersey Attorney General on or about June 28, 2002.

Plaintiff alleges that, since he filed the Notice of Claim, he has been subjected to a barrage of administrative disciplinary charges.

Plaintiff alleges that, while confined at East Jersey State Prison between December 27, 2001, and December 26, 2002, he was convicted of four "bogus and retaliatory" disciplinary charges and that guards stole items of his personal property.

On December 26, 2002, Plaintiff was transferred to Northern State Prison.  Plaintiff alleges that, on that day, a prison guard stole his property overnight bag, containing a personal phone book, photos, personal papers, and a walkman.  Plaintiff alleges that, while confined at Northern State Prison, he was convicted of 14 "bogus retaliatory" disciplinary charges.

Plaintiff was transferred from Northern State Prison to South Woods State Prison in April of 2005.  Plaintiff was transferred back to Northern State Prison in July, 2005.  On February 6, 2006, Plaintiff was transferred back to New Jersey State Prison, where he has remained.  Plaintiff alleges that, while confined at New Jersey State Prison, he has been convicted of 14 disciplinary charges, "most of which were bogus." Plaintiff alleges that another phone book was stolen in 2008 and

3

that he has "been held in segregation/lockup without legal access
to the courts most of the time he's been back at NJSP."

Plaintiff acknowledges that he previously filed a federal
complaint based upon some of the same facts asserted here.  See
Durham v. State of New Jersey, Civil Action No. 03-6101 (D.N.J.).
The allegations of the 2003 action relate to the alleged assault
of December 27, 2001, and alleged acts of retaliation including
allegedly false disciplinary charges and loss of personal
property through the date of the Amended Complaint, April 1,
2004.  Contrary to Plaintiff's characterization of the resolution
of that action, this Court dismissed without prejudice the
federal claims against the State of New Jersey, Department of
Correction, New Jersey State Prison, New Jersey Department of
Corrections, and East Jersey State Prison, pursuant to the
Eleventh Amendment to the U.S. Constitution.  Later, the entire
action, including claims against fictitious defendants, was
settled and dismissed with prejudice.  See Durham v. State of New
Jersey, No. 03-6101, Document No. 15 (Opinion and Order of
partial dismissal), Document No. 42 (Order of dismissal), and
Document No. 43 (Stipulation of Dismissal).  Plaintiff's recent
motion to re-open the 2003 action was denied and Plaintiff has
appealed that Order.

Here, Plaintiff names as Defendants the New Jersey
Department of Corrections ("NJDOC"), New Jersey State Prisons,

4

New Jersey State Prison Administrator Michelle R. Ricci, New Jersey State Prison Administrator Roy Hendricks, NJDOC Commissioner Devon Brown, Northern State Prison Administrator Lydell B. Sherrer, South Woods State Prison Administrator Kathy McFarland, East Jersey State Prison Administrator Terry Moore, and NJDOC Commissioner George Hayman.  With respect to all of these defendants, Plaintiff alleges that they failed to keep him safe from retaliation by other prison employees and they failed to protect his property.

Plaintiff seeks injunctive relief in the form of release to the general population at New Jersey State Prison North or South Compound or protective custody or South Woods State Prison until this case is decided.  He seeks declaratory relief, return of his property, and all further appropriate relief.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

6

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ...  It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice.  Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be
> independent action.

> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an
> account of a defendant's commercial efforts stays in
> neutral territory. ...

<u>Twombly</u>, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the Twombly
pleading standard applies outside the § 1 antitrust context in
which it was decided.  See Phillips v. County of Allegheny, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory

8

statements." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation." <u>Id.</u> at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by
identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

> Therefore, after <u>Iqbal</u>, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
> at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

9

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,
Federal Practice and Procedure, § 1655 (3d ed. 2009).[1]

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34
(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane
v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg
County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the

---

[1] Because of the disposition of this matter, this Court need
not determine whether the multiple claims asserted here against
multiple defendants are otherwise properly joined.

alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, to the extent Plaintiff seeks to hold the various prisoner administrator defendants vicariously liable for the acts

12

of their subordinates, he fails to state a claim, as there is no vicarious liability under § 1983.

IV.  <u>ANALYSIS</u>

A.  <u>Eleventh Amendment Immunity</u>

Plaintiff here asserts claims against state entities -- the New Jersey Department of Corrections and New Jersey State Prisons -- and against various state officers in their officials capacities.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in

13

their official capacities.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  <u>Quern v. Jordan</u>, 440 U.S. 332 (1979).  Thus, the Eleventh Amendment would require dismissal without prejudice of these claims, for lack of jurisdiction.

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.10 (1989); <u>Grabow v. Southern State Correctional Facility</u>, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).  Thus, as the state entities, and state officers in their official capacities are not persons subject to liability under § 1983, the claims against these entities and persons, in their official capacities, must be dismissed with prejudice.

For the foregoing reasons, all claims against the New Jersey Department of Corrections and New Jersey State Prisons, and against the defendants Michelle R. Ricci, Roy Hendricks, Devon Brown, Lydell B. Sherrer, Kathy McFarland, Terry Moore, and

14

George Hayman, in their official capacities, must be dismissed with prejudice.

B.   <u>Claims Previously Settled</u>

Plaintiff previously asserted against Defendants State of New Jersey, Department of Corrections, and New Jersey State Prison, the same claims asserted here arising out of events up until April 1, 2004.

Thus, insofar as the claims alleged here against these defendants are the same claims alleged in <u>Durham v. State of New Jersey</u>, Civil Action No. 03-6101, the doctrine of res judicata precludes their relitigation here.  <u>See</u>, <u>e.g.</u>, <u>Marin v. Department of Defense</u>, 145 Fed.Appx. 754, 2005 WL 2009027 (3d. Cir. Aug. 23, 2005) (dismissing, as frivolous, appeal by in forma pauperis appellant of District Court's dismissal of previously-litigated claims on basis of doctrine of res judicata).  These claims will be dismissed with prejudice.

C.   <u>Statute of Limitations</u>

Plaintiff alleges claims dating back to December 27, 2001. He alleges no facts that would suggest any ground for statutory or equitable tolling of the limitations period.  Accordingly, all claims arising out of events occurring before August 18, 2007, the date of the Complaint, will be dismissed with prejudice as time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 127 S.Ct. 910, 920-21 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). See also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir. 2007) ("district court may sua sponte dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing Jones v. Bock, Pino v. Ryan) (not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current

16

§ 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998)(unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D. Pa. 1997) (applying <u>Pino</u> to current § 1915(e)).  The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is <u>not</u> resolved by reference to state law." <u>Wallace v. Kato</u>, 127 S.Ct. 1091, 1095 (2007) (emphasis in original).

A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." <u>Sandutch v. Muroski</u>, 684 F.2d 252, 254 (3d Cir. 1982). <u>See also</u> <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 (3d Cir. 1994).  "Plaintiff'S actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at 1386).

17

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has

"in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."   Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, according to the allegations of his Complaint, Plaintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.  Thus, all of Plaintiff's claims against all defendants that arose out of events occurring before August 18, 2007, are time-barred and will be dismissed with prejudice.

To recap, therefore, Plaintiff alleges that he was
transferred back to New Jersey State Prison on February 6, 2006,
where he has remained, and that since that time he has been
"convicted wrongfully of 14 DCRs most of which were bogus."  He
also alleges that a phone book was stolen in 2008, and that he
has been held in segregation/lock-up without access to the courts
most of the time since he was transferred back to New Jersey
State Prison in 2006.

D.   Access to Courts Claims

The constitutional right of access to the courts is an
aspect of the First Amendment right to petition the government
for redress of grievances.  Bill Johnson's Restaurants, Inc. v.
NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,
Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access

to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.
Impairment of any other litigating capacity is simply one of the
incidental (and perfectly constitutional) consequences of
conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355
(1996) (emphasis in original).

There is no "abstract, freestanding right to a law library
or legal assistance, [and] an inmate cannot establish relevant
actual injury simply by establishing that his prison's law
library or legal assistance program is subpar in some theoretical
sense.  ...  [T]he inmate therefore must go one step further and
demonstrate that the alleged shortcomings in the library or legal
assistance program hindered his efforts to pursue a [non-
frivolous] legal claim.  He might show, for example, that a
complaint he prepared was dismissed for failure to satisfy some
technical requirement which, because of deficiencies in the
prison's legal assistance facilities, he could not have known.
Or that he had suffered arguably actionable harm that he wished

21

to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial."  <u>Bounds</u>, 430 U.S. at 824-25, <u>clarified on other grounds</u>, <u>Lewis v. Casey</u>, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." <u>Reynolds v. Wagner</u>, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel.  <u>See e.g.</u>, <u>Bounds</u>, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); <u>Rauso v. Zimmerman</u>, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); <u>Pressley v. Johnson</u>, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury."  <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3
(1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has failed to allege that he sought to
assert a type of claim protected by the <u>Bounds</u> rule or that he
suffered any actual injury as a result of his alleged inability
to access the courts.  Moreover, to the extent he alleges injury
related to his inability to bring a timely action arising out of
the events described in this Complaint, the Court takes note, as
described more fully below, that any claims arising out of the
events allegedly occurring before August 18, 2007, are as
meritless as the similar claims, discussed below, that are not
time-barred.  Accordingly, the access-to-courts claims will be
dismissed without prejudice.

E.    <u>Procedural Due Process Claims</u>

Plaintiff alleges that he was falsely accused of
disciplinary charges and that he has spent much time in
administrative segregation.  The Court construes these
allegations as an attempt to state a claim for deprivation of
liberty without due process.

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or State law.  <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983);

23

Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.
1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of
psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

"Discipline by prison officials in response to a wide range
of misconduct falls within the expected parameters of the
sentence imposed by a court of law." Sandin, 515 U.S. at 485
(upholding prisoner's sentence of 30 days' disciplinary
segregation following a hearing at which he was not permitted to

24

produce witnesses).  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).  See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).  In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.  The Court of Appeals did note, however, that

25

if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Id.

As Plaintiff has not alleged any facts suggesting that his confinement in segregation subjected him to "atypical and significant hardship," he has failed to state a claim arising out of this confinement, and this claim will be dismissed without prejudice.

Plaintiff also has failed to state a claim with respect to the allegedly false disciplinary charges.  Indeed, as Plaintiff has not alleged that the false disciplinary charges have affected the duration of his sentence or otherwise caused him any atypical and significant hardship, he has failed to assert that defendants deprived him of a protected liberty interest at all.  See Wilson v. Wellman, 238 F.3d 426, 2000 WL 1829265 (6th Cir. Dec. 6, 2000); Washington v. Madding, 189 F.3d 476, 1999 WL 511125 (9th Cir. July 15, 1999).[2]  Moreover, had the filing of false disciplinary charges somehow implicated a protected liberty interest, Plaintiff also would have to demonstrate "that the

_____

[2] The Court notes that any claim that a deficient disciplinary proceeding affected the length of Plaintiff sentence would have to be brought as a habeas action, pursuant to 28 U.S.C. § 2254, following exhaustion of state remedies.

26

procedures afforded him at the disciplinary hearing fell short of the requirements enunciated in Wolff v. McDonnell[, 418 U.S. 539 (1974)]." Jackson v. Johnson, 15 F.Supp.2d 341, 351 (S.D.N.Y. 1998). See Sandin, 515 U.S. at 487. Here, Plaintiff makes no such allegation of defective procedures. Accordingly, these claims must be dismissed without prejudice.

F.   Deprivation of Property Claims

Plaintiff alleges that a personal phone book was stolen from him in 2008. He does not allege the identity of the person who allegedly stole the book, or the circumstances under which it was taken, but asserts liability under a theory that the defendants had a duty to protect him and his property from such theft. The Court construes the Complaint as asserting that the book was taken by one or more prison officials.

An unauthorized deprivation of property by a government actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fifth or Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 530-36 (1984) (decided under Due Process Clause of Fourteenth Amendment); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981) (same), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986).

27

New Jersey law provides for a judicial remedy for unauthorized deprivation of property by public employees.  See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001).

In addition, in the context of prison confiscation of alleged contraband, a post-deprivation remedy may satisfy the requirements of due process, even if the prisoner's personal property was confiscated pursuant to an established policy.  See, e.g., Barr v. Knauer, 2009 WL 962684 (3d Cir. April 10, 2009) (approving post-deprivation grievance remedy following confiscation of electric razor); Monroe v. Beard, 536 F.3d 198, 209-10 (3d Cir. 2008) (in light of prison's legitimate security needs, pre-deprivation notice is not constitutionally required), cert. denied, 129 S.Ct. 1647 (2009); Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000) (prison grievance procedure satisfies procedural due process concerns where state must take quick action or where it is impractical to provide meaningful predeprivation process).  The existence of a prison post-deprivation grievance remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process.  Iseley v. Horn, 1996 WL 510090, *6 (E.D. Pa. Sept. 3, 1996).

Here, as New Jersey law provides an appropriate remedy for deprivation of property, whether unauthorized or pursuant to a

policy, the claim for deprivation of property without due process must be dismissed with prejudice.

G.   Retaliation Claims

Plaintiff alleges that the allegedly false disciplinary charges and theft of his personal phone book were undertaken in retaliation for his having filed a formal Notice of Claim with respect to the incident which occurred in December of 2001.

As noted above, disciplinary confinement of prisoners does not generally implicate due process protections.  Sandin v. Connor, 515 U.S. 472, 484-86 (1995).  To state a claim, an inmate must show that he has experienced disciplinary confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484. Retaliation claims, however, survive Sandin, even when the retaliatory action does not involve a liberty interest.  Allah v. Seiverling, 229 F.3d 220, 223-24 (3d Cir. 2000).  To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v.

29

Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City
Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-
X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

    To avoid dismissal, "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct.
1937, 1949 (2009) (quotation omitted); see also United States
Dep't of Transp., ex rel. Arnold v. CMC Eng'g, 564 F.3d 673, 676
(3d Cir. 2009).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 129 S.Ct. at 1949.  Thus, to state a
claim for retaliation, a plaintiff must allege "'a chronology of
events from which retaliation may be inferred.'" Bendy v. Ocean
County Jail, No. 07-1421, 2009 WL 2170424, *3 (3d Cir. July 22,
2009) (citation omitted).

    Here, assuming Plaintiff was engaging in
constitutionally-protected activity, Plaintiff nevertheless has
failed to allege adverse action sufficient to deter a person of
ordinary firmness from exercising his constitutional rights.
Certainly, Plaintiff does not allege that he, personally, was
deterred from exercising his constitutional rights.  He has
continued to bring civil rights actions and appeals in federal

court.  Nor has Plaintiff alleged a chronology of events from
which retaliation could be inferred.  Plaintiff has alleged that
he filed an administrative Notice of Claim arising out of an
assault that prison authorities determined, in January 2002,
based upon a videotape, did not arise out of any disciplinary
infraction by Plaintiff.  Thus, prison authorities apparently
found that Plaintiff had not committed any action that justified
the alleged assault.  He now alleges that his attempt to pursue a
claim arising out of that incident led to more than seven years
of false disciplinary charges.  In light of this context, the
agreement of a disciplinary hearing officer that Plaintiff had
done nothing wrong, and the allegation of a remote temporal
connection between Plaintiff's administrative claim and the
subsequent disciplinary charges, the allegations are not
sufficient to raise his claim of retaliation above the
speculative level.  Cf. Gans v. Rozum, No. 06-62J, 2007 WL
257127, *6 (W.D. Pa. Aug. 31, 2007) (mere temporal connection
between filing of civil rights complaint and exercise restriction
is "too thin a reed" on which to hang a retaliation claim),
aff'd, 267 Fed.Appx. 178 (3d Cir.) (unpubl.), cert. denied, 129
S.Ct. 84 (2008); Lopez v. Beard, No. 08-3699, 2009 WL 1705674 (3d
Cir. June 18, 2009) (allegation of that denial of visitation on
two occasions was in retaliation for filing grievances is
frivolous).

31

The retaliation claims will be dismissed with prejudice for failure to state a claim.

H.   <u>Failure to Supervise</u>

Plaintiff alleges that the individual defendants had a duty to protect him from the alleged false disciplinary proceedings and property theft.  The Court construes this as an attempt to state a claim for failure to supervise and/or train.

"[A] failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126-27 (3d Cir. 1998) (citation omitted).  Plaintiff has failed to allege any facts suggesting knowledge of a pattern of incidents and circumstances under which the defendant supervisors' actions or inactions could be found to have communicated a message of approval to subordinates.

In addition, where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," <u>City of Canton</u>, 489 U.S. at 390, and that failure to train "actually causes injury,"

32

a supervisor may be held liable, <u>Id.</u>  Here, however, Plaintiff
fails to state a claim for a constitutional injury; thus, he
fails to state a claim for failure to supervise and/or train.

In addition, in resolving the issue of supervisory
liability,

> the focus must be on adequacy of the training program
> in relation to the tasks the particular officers must
> perform.  That a particular officer may be
> unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's
> shortcomings may have resulted from factors other than
> a faulty training program.  ...  Neither will it
> suffice to prove that an injury or accident could have
> been avoided if an officer had had better or more
> training ... .  Moreover, for liability to attach ...
> the identified deficiency in a city's training program
> must be closely related to the ultimate injury.

<u>Id.</u> at 390-91.  Plaintiff alleges nothing more than that unnamed
individual corrections officers retaliated against him, plainly
an insufficient allegation upon which to base liability for
failure to train.  Accordingly, Plaintiff's failure to train
and/or supervise claim must be dismissed for failure to state a
claim.

V.  <u>CONCLUSION</u>

For the reasons set forth above, all claims must be
dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1), for failure to state a claim.[3]  However, because it

---

[3] The Court notes that "'[g]enerally, an order which
dismisses a complaint without prejudice is neither final nor
appealable because the deficiency may be corrected by the
plaintiff without affecting the cause of action.' ...  The

is conceivable that Plaintiff may be able to supplement his
pleading with facts sufficient to overcome the deficiencies noted
herein with respect to the claims dismissed without prejudice,
the Court will grant Plaintiff leave to move to re-open within 30
days, attaching to any such motion a proposed amended complaint.[4]
An appropriate order follows.


                                  *s/Peter G. Sheridan*
                                  Peter G. Sheridan
                                  United States District Judge

Dated:  March 29, 2010

_____

dispositive inquiry is whether the district court's order finally
resolved the case."  Martin v. Brown, 63 F.3d 1252, 1257-58 (3d
Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951
(3d Cir. 1976)) (other citations omitted).  In this case, if
Plaintiff can correct the deficiencies of his Complaint, he may
file a motion to re-open these claims in accordance with the
court rules.

    [4] Plaintiff should note that when an amended complaint is
filed, the original complaint no longer performs any function in
the case and "cannot be utilized to cure defects in the amended
[complaint], unless the relevant portion is specifically
incorporated in the new [complaint]."  6 Wright, Miller & Kane,
Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes
omitted).  An amended complaint may adopt some or all of the
allegations in the original complaint, but the identification of
the particular allegations to be adopted must be clear and
explicit.  Id.  To avoid confusion, the safer course is to file
an amended complaint that is complete in itself.  Id.